```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA

CINDI HUTTON                        )
                                    )
            Plaintiff,              )
                                    )
                                    )  Case No. CIV-20-414-JFH-KEW
                                    )
COMMISSIONER OF THE SOCIAL          )
SECURITY ADMINISTRATION,            )
                                    )
            Defendant.              )
```

## REPORT AND RECOMMENDATION

Plaintiff Cindi Hutton (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. The Claimant appeals the Commissioner's decision, asserting that the Administrative Law Judge ("ALJ") incorrectly determined she was not disabled. For the reasons discussed below, the undersigned Magistrate Judge recommends that the Commissioner's decision be REVERSED and REMANDED.

### Claimant's Background

The Claimant was 54 at the time of the ALJ's decision. She has a high school education and has completed one year of college. She has worked in the past as an accounts payable clerk, purchasing clerk, and bench assembler. The Claimant alleges her inability to work began on November 21, 2017. She later amended this date to June 28, 2018. She claims this inability stems from limitations

1

resulting from arthritis in her shoulder, damaged disks in her neck, damaged disks in her lower back, pinched sciatic nerve on her right side, and bone spurs in her knee.

## Procedural History

On July 27, 2018, the Claimant filed an application for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Her claim was initially denied and was also denied upon reconsideration. The Claimant filed a request for a hearing, which was held on December 13, 2019, in Tulsa, Oklahoma, in front of ALJ Lantz McClain. ALJ McClain entered an unfavorable decision on January 4, 2020. The Claimant requested a review by the Appeals Council. The Council denied this request on February 2, 2020. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ followed the five-step sequential process that the social security regulations use to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] At step two, the ALJ found

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a

2

that the Claimant had the following severe impairments: status post arthroscopy of the left knee; status post fusion at C-4 to C-6; degenerative joint disease of the left shoulder; status post right total knee arthroplasty; degenerative disc disease; and obesity/status post sleeve gastrectomy. (Tr. 85). As for the Claimant's mental impairments, the ALJ noted that the Claimant was treated for a mood disorder, but her alleged disability was not based on depression. (Tr. 86). He proceeded to consider the four broad functional areas, known as the "paragraph B" criteria. (Tr. 87). He ultimately determined that "the [C]laimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area." (Tr. 87). Therefore, these impairments were nonsevere. (Tr. 87). The ALJ determined that the Claimant had the following RFC:

> the undersigned finds that the claimant has the residual functional capacity to lift and/or carry up to 10 pounds frequently and 10 pounds occasionally; stand and/or walk for 2 hours in an 8-hour workday; and sit for 6 hours in

---

listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

>an 8-hour workday (Sedentary work is defined in 20 CFR 404.1567(a)).

(Tr. 89). The ALJ concluded that this RFC would allow the Claimant to return to her past relevant work as an accounts payable clerk and a purchasing clerk. (Tr. 92). Thus, she was not disabled. (Tr. 92).

### Errors Alleged for Review

The Claimant alleges that the ALJ erred at step two and four of the sequential evaluation. She also alleges that the ALJ failed to assess the medical source opinions properly.

### Social Security Law and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A).

Judicial review of the Commissioner's final determination is limited to two inquiries: first, whether the correct legal standards were applied; and second, whether the decision was supported by substantial evidence. *Noreja v. Comm'r, SSA*, 952 F.3d.

4

1172, 1177 (10th Cir. 2020). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means — and means only — 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01. The Commissioner's decision will stand, even if a court might have reached a different conclusion, as long as it is supported by substantial evidence. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

### Step Two

The Claimant contends that the ALJ erred at step two of the sequential disability evaluation in three ways: (1) he failed to consider the Claimant's left shoulder injuries when determining the RFC, even though he found that they were severe;(2)he failed to consider the Claimant's nonsevere mental impairments when determining the RFC; and (3) he failed to determine if the

5

Claimant's carpal tunnel syndrome was severe, nonsevere, or medically nondeterminable. While the Claimant makes the first two arguments under the guise of a step two error, they are more issues with the RFC determination than issues with step two. The Court addresses these arguments below since the RFC determination is impacted by the medical opinions. As for the carpal tunnel issue, the Court need not address this potential error because even if the ALJ did error, the error was harmless because he found at least one severe impairment and proceeded to the RFC determination. *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe").

### Medical Opinions

The Claimant also argues that the ALJ failed to consider the medical source evidence properly. Specifically, she takes issue with the fact that the ALJ only included some limitations from Dr. Larry Lewis, M.D.'s opinion. The Claimant also asserts that the ALJ picked only the medical evidence which was favorable to finding the Claimant was not disabled. For the reasons outlined below, the Court agrees that the ALJ did not correctly assess the medical opinion of Dr. Lewis, and therefore, this case must be remanded.

The Claimant applied for benefits on or after March 27, 2017, meaning that the medical opinion evidence is subject to evaluation

pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under these new standards the ALJ does not "defer or give specific evidentiary weight. . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520(c)(a). An ALJ considers medical opinions utilizing five factors: (1) supportability, (2) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The ALJ must utilize these factors when determining how persuasive he finds the medical opinions and prior administrative medical findings. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

Generally, when examining medical opinions, the ALJ must only specifically explain how he considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b). However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are

7

not exactly the same, [he] will articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

An ALJ continues to have the duty to evaluate every medical opinion in the record regardless of its source. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). He may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability"). If he rejects an opinion completely, the ALJ must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

In this case, the ALJ ignores medical evidence that does support Dr. Lewis's limitations and therefore fails to adequately address why the record does not support Dr. Lewis's opinion. The ALJ first summarizes the medical source statement of Dr. Lewis. (Tr. 90; 1467-75). Dr. Lewis indicated that the Claimant "could sit/stand/walk for less than 2 hours; would need to change positions at will; would need unscheduled breaks; would need to elevate her legs all the time." (Tr. 90) (internal quotations omitted). Dr. Lewis also said the Claimant "could never look down,

8

turn her head right or left, twist, crouch, squat, or climb ladders or stairs; was incapable of low-stress jobs; and would be absent from work about four days a month." (Tr. 90). The ALJ found this opinion and these limitations unpersuasive. (Tr. 90-91). He provided the following explanation:

> Dr. Lewis' opinions are not persuasive because they are not consistent with the evidence as a whole. On August 6, 2019, physical examination showed negative straight leg raising, normal mobility and tracking without crepitation in the left knee, 5/5 quad strength, no swelling, full range of motion of the spine, and motor and sensory exam were normal (Exhibit 27F, page 21). In addition, these forms are not Social Security approved forms. Dr. Lewis stated he had seen the claimant on one occasion – the date he completed the forms (Exhibit 29F, page 7). Dr. Lewis gave an opinion regarding the claimant's mental capacity and there is no evidence that he is a mental health professional. Dr. Lewis' extreme limitations are not supported by the claimant's activities. On July 18, 2018, the claimant stated she walked and exercised in a pool 3-4 times a week (Exhibit 5F, page 13). On December 5, 2018, the claimant was exercising 30 minutes a day for 3-4 days a week and reported feeling much better since her right knee replacement (Exhibit 14F, page 2). On June 19, 2019, the claimant stated she helped with her son's children during the week, ages 2 and 7 (Exhibit 18F, page 15). On September 18, 2019, the claimant stated she was experiencing increased energy level and ability to keep up with her grandkids (Exhibit 18F, page 2). For these reasons, Dr. Lewis' opinion is not persuasive.

(Tr. 90). While the Court recognizes that the ALJ does mention some specific inconsistencies, he fails to address evidence that does support Dr. Lewis's limitations and fails to explain why that evidence need not be considered. First, the ALJ fails to mention all the evidence from the report on August 6, 2019, which he relied

on to discredit Dr. Lewis. (Tr. 90-91). The ALJ fails to mention that this report also included abnormal findings regarding the Claimant's knee and gait. (Tr. 1383). The ALJ also does not mention the x-rays discussed in this report were "consistent with advance degenerative disease" and the overall assessment note, which found severe osteoarthritis in the left knee. (Tr. 1383). The Defendant argues that these findings are only relevant to the limitations on the Claimant's ability to sit, stand, or walk, and since those limitations are not in question, the fact that the ALJ failed to discuss this evidence is irrelevant. The Court disagrees as these findings could support Dr. Lewis's limitations, such as the need for a cane, to not sit for more than two hours, to change positions at will, and to take unscheduled breaks. (Tr. 90, 1383, 1467).

The Defendant also attempts to argue that the ALJ's sparse specific citations are enough to explain why he did not adopt the limitations Dr. Lewis found. But this argument ignores that the ALJ left out portions of the evidence which did support these limitations and failed to explain why he did so. The Defendant further argues that the ALJ did not error by ignoring Dr. Zeeshan Khan, M.D.'s notes, which the Claimant asserts supports Dr. Lewis's limitations. The Defendant provides little reason for why the Court should disregard the potential support of these records, except that it was "not an opinion that [the Claimant] could not engage in activities. Thus, the ALJ was not required to address it." (See

Tr. 570-628). The Court disagrees with this contention. The ALJ cannot pick and choose certain portions of medical evidence that support his analysis without explaining why he is rejecting others, as he has done so here. *Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004).

The Court would note that since Dr. Lewis's opinion contained limitations based on the Claimant's shoulder issues that the Court need not decide whether the ALJ considered the Claimant's osteoarthritis in his RFC determination as the reevaluation of Dr. Lewis's opinion may change the RFC and the limitations included. (See Tr. 1467-1475). As for the Claimant's mental limitations, the Court would note that she did not include these on her original application and the only thing in the record to suggest mental limitations is Dr. Lewis's opinion. Therefore, the Court finds little merit in her argument that the ALJ should have considered mental limitations. Because the ALJ failed to properly assess all medical opinions and provide explanations for his choices to ignore portions of evidence which supported Dr. Lewis's limitations, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of the medical opinions.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above

and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be REVERSED and the case REMANDED for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

　　　DATED this 30th day of September, 2022

　　　　　　　　　　　　　　　　　　　KIMBERLY E. WEST
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE